B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Kevin M. Epstein, United States Trustee | **DEFENDANTS**<br>Adrian Modesto Torres |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Elizabeth Young, Office of the United States Trustee<br>1100 Commerce Street, Room 976, Dallas, Texas 75242<br>214-767-1247 | **ATTORNEYS** (If Known)<br>Jim Morrison, The Lee Law Firm<br>4228 N. Central Expressway<br>Dallas, Texas, 75206 |

**PARTY** (Check One Box Only)
☐ Debtor   ☑ U.S. Trustee/Bankruptcy Admin
☐ Creditor   ☐ Other
☐ Trustee

**PARTY** (Check One Box Only)
☑ Debtor   ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor   ☐ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
11 U.S.C. 727(a)(4)(A), (a)(2), (a)(5), (a)(6) and (a)(7)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☑ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Adrian Modesto Torres | BANKRUPTCY CASE NO.<br>23-41966 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | DIVISION OFFICE<br>Fort Worth | NAME OF JUDGE<br>Mullin |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>January 11, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Elizabeth Young | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **ADRIAN MODESTO TORRES** | § | **CASE NO. 23-41966-MXM-7** |
| | § | |
| | § | |
| **DEBTOR.** | § | |

_____

| | | |
|---|---|---|
| | § | |
| **KEVIN M. EPSTEIN,** | § | |
| **UNITED STATES TRUSTEE,** | § | |
| | § | |
| **PLAINTIFF,** | § | **ADVERSARY NO.  _____** |
| | § | |
| **v.** | § | |
| | § | |
| **ADRIAN MODESTO TORRES** | § | **HON. MARK X. MULLIN** |
| | § | |
| **DEFENDANT.** | § | |

**<u>United States Trustee's Complaint Objecting to Debtor's Discharge</u>**

TO THE HONORABLE MARK X. MULLIN, UNITED STATES BANKRUPTCY JUDGE:

The United States Trustee for Region 6 files this Complaint Objecting to Debtor's

Discharge.  The United States Trustee would respectfully show the Court the following:

**<u>Jurisdiction and Venue</u>**

1.     This Complaint is filed under 11 U.S.C. §§ 307 and 727.  The Court has jurisdiction to

hear and determine this complaint under 28 U.S.C. § 157(b)(2)(J) and the General Order of

Reference of the United States District Court for the Northern District of Texas.

2.     Venue of this proceeding is in the United States District Court for the Northern District of

Texas under 28 U.S.C. § 1409(a).

1

## Parties

3.      Plaintiff is Kevin M. Epstein, the United States Trustee for Region 6 ("United States Trustee").

4.      Defendant is the Debtor Adrian Modesto Torres ("Mr. Torres" or "Defendant").

## Facts

### Background

5.      Mr. Torres is a 36-year-old man who owns and operates Metroplex Recovery, LLC, a mobile locksmith company.

6.      Mr. Torres has owned Metroplex Recovery, LLC since 2012.

7.      Mr. Torres received a bachelor's degree in finance from the University of Texas at Arlington in 2013.

8.      Mr. Torres previously filed an individual chapter 13 case on May 12, 2023 ("Previous Case"). [docket no. 1, case no. 23-41374]

9.      The Previous Case was dismissed on June 22, 2023, because Mr. Torres did not make his first payment to the chapter 13 trustee.  [docket no. 17, case no. 23-41374]

10.     Mr. Torres failed to file any schedules or statements of financial affairs in the Previous Case.

### Present Bankruptcy Case

11.     On July 6, 2023 ("Petition Date"), Mr. Torres filed a voluntary chapter 13 petition, commencing 23-41966 ("Present Case").

12.     Jim Morrison represents Mr. Torres in the Present Case. [docket no. 1]

13.     On July 31, 2023, the Debtor filed a notice of voluntary conversion to chapter 7, which the Court granted on August 1, 2023. [docket nos. 22 and 23]

2

14.     Mr. Torres indicated on the petition that his debts are primarily consumer in nature.

15.     Mr. Torres appeared and testified under oath at the first September 12, 2023, § 341 meeting of creditors ("September 12th Meeting").

16.     The September 12th 2023, Meeting was continued to October 3, 2023, where Mr. Torres also appeared and testified under oath ("October 3rd Meeting").

17.     Mr. Torres testified at the September 12th Meeting that he filed this bankruptcy because of a decrease in income from Metroplex.

18.     On December 19, 2023, the United States Trustee conducted a Rule 2004 examination of Mr. Torres ("2004 Exam").

19.     Per agreement and court order, the deadline for the United States Trustee to file a complaint or a motion to dismiss is January 12, 2024. [docket nos. 71, 72]

**Original Schedules and SOFA**

20.     On August 1, 2023, Mr. Torres filed original Schedules and Statements of Financial Affairs. [docket nos. 25, 26]

21.     Mr. Torres signed Official Form 106Dec and his signature on this form indicates that "[u]nder penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct." [docket no. 25].

22.     Mr. Torres signed the Statement of Financial Affairs and his signature on this form indicates that "I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct." [docket no. 26].

23.     Mr. Torres scheduled a total of $0 in real property. [docket no. 25, Schedule A/B]

24.     Mr. Torres scheduled a total of $110,846.78 in personal property, including the following:

        a.      2022 Mercedes Benz GLES3 valued at $0;

3

  b.  2023 BMW 4 Competition Coupe valued at $95,000.00;

  c.  Exercise equipment valued at $300.00;

  d.  Clothing, Shoes and Designer Wear valued at $900.00;

  e.  Rolex Watch valued at $8,500.00;

  f.  French Bulldog valued at $600.00;

  g.  Cash of $500.00;

  h.  Chase account xxx6105 with a negative balance;

  i.  100% of the ownership of Metroplex Mobile Diagnostics, LLC valued at $1,546.78;

  j.  100% of the ownership of Metroplex Recovery, LLC valued at $0;

  k.  Furniture with a combined value of $1,500.00;

  l.  Electronics with a value of $1,400.00 and

  m.  Firearms with a value of $600.00. [docket no. 25, Schedule A/B]

25.  Mr. Torres scheduled a total of $3,410,287.25 in debt. [docket no. 25, Summary of Schedules]

26.  Mr. Torres scheduled $211,785.00 in secured claims.  [docket no. 1, Schedule D]

27.  Mr. Torres scheduled $67,913.44 in unsecured priority debt owed to his ex-wife Cristan Torres ($22,000.00) and the IRS ($45,913.44). [docket no. 25, Schedule E/F]

28.  Mr. Torres scheduled $3,123,925.81 in general unsecured debt.  [docket no. 25, Schedule E/F]

29.  Some specific debts listed on Schedule F include:

  a.  $15,947.00 owed to Helzberg Diamonds for credit card purchases;

  b.  $127,028.00 owed to Legend Advance Funding II LLC for Business Debt;

4

     c.       $359,731.00 owed to Mercedes Benz for multiple Business Debts; and

     d.       $1,836,900.00 owed to the US Dept of Treasury SBA for Business Debt.

30.    Mr. Torres listed no co-debtors on Schedule H. [docket no. 25, Schedule H]

31.    Mr. Torres' Schedule I reflects he earns $7,000.00 a month as Owner/Operator for Metroplex.  [docket no. 25, Schedule I]

32.    Schedule I fails to reflect any other income, gifts or family contributions.

33.    Mr. Torres' Schedule J reflects monthly expenses of $6,867.37. [docket no. 25, Schedule J]

34.    Mr. Torres' SOFA question 13 is blank and fails to list gifts in excess of $600.00 in the two years before this case filed.

35.    Mr. Torres' SOFA question 15 is blank and fails to list any losses in the year prior to filing this case.

36.    Mr. Torres' SOFA question 18 is blank and fails to list any transfers in the two years before the case filed.

37.    Mr. Torres' Schedules are signed under penalty of perjury.

38.    Mr. Torres' SOFA is signed under penalty of perjury.

39.    At his 341 meeting on September 12, 2023, Mr. Torres affirmed the information contained in his Schedules and SOFA was true and accurate.

**341 Meeting Testimony**

40.    At his 341 meeting of creditors on September 12, 2023, Mr. Torres testified as follows:

     a.       He was a co-debtor on many of the debts listed with Metroplex.

     b.       His Clothing and Designer Wear consisted of jeans and t-shirts.

c.    He purchased both the 2023 BMW 4 Competition Coupe and the Rolex in the year

prior to filing this case.

d.    He transferred his interest in 524 Stone Crossing Lane, Fort Worth, to his ex-wife

Christian Torres in the year prior to filing this case.

**Amended Schedules and SOFA**

41.    On October 2, 2023, Mr. Torres amended his Schedules and SOFA ("Amended Schedules"

and "Amended SOFA").  [docket nos. 56, 61]

42.    Mr. Torres signed Amended Official Form 106Dec and his signature on this form indicates

that "[u]nder penalty of perjury, I declare that I have read the summary and schedules filed with

this declaration and that they are true and correct." [docket no. 56].

43.    Mr. Torres signed the Amended SOFA and his signature on this form indicates that "I have

read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under

penalty of perjury that the answers are true and correct."  [docket no. 61].

44.    Amended Schedule A/B now describes Mr. Torres' clothes as "Clothing, Shoes" with a

value of $900. [docket no. 56]

45.    Amended Schedule D now lists Helzberg Diamonds as a secured creditor for $15,947.00.

[docket no. 56]

46.    Amended Schedule H now lists Metroplex as a co-debtor on 28 of Mr. Torres' debts.

[docket no. 56]

47.    Amended SOFA question 18 now lists the transfer of Mr. Torres' interest in 524 Stone

Crossing Lane to Ms. Christian Valerie Torres.  [docket no. 61]

**The Missing Rolex**

48.     On May 13, 2023, one day after he filed the Previous Case, Mr. Torres purchased a Gents

Rolex Perpetual Submariner 18k yellow gold watch for $18,497.77 from Helzberg Diamonds.

49.     Mr. Torres purchased the Rolex using a Helzberg credit card, financing $15,900.00.

50.     Mr. Torres testified:

```
12      Q.   Okay.  And then just, again, so that I am
13   clear on the timing here, because you purchased
14   the -- the watch on May 13th; is that correct?
15      A.   Correct.
16      Q.   So that was actually the day after you
17   filed your first bankruptcy case; correct?
18      A.   Correct.
19      Q.   Is there a reason why you bought a $17,988
20   watch the day after you filed a Chapter 7
21   bankruptcy?
22      A.   No.  I mean -- I mean, it was just -- I
23   thought that it was just an expense, a personal
24   expense.  But, I mean, I do know that might look
25   bad, you know, on -- on myself and the bankruptcy.
```

```
1   But I just didn't saw it that way.
```

2004 Tr. 92:12-93:1.

51.     Mr. Torres failed to obtain court approval to purchase the Rolex post-petition in the

Previous Case.

52.     In the Present Case, as of August 1, 2023, Mr. Torres valued the Rolex at $8,500.00 on his

Original Schedule A/B. [docket no. 25]

7

53.     That same date, August 1, 2023, Mr. Torres filed a police report with the Fort Worth Police Department indicating the Rolex was stolen on July 12, 2023.

54.     At the September 12th Meeting, Mr. Torres testified he purchased the Rolex in the beginning of 2023.

55.     Mr. Torres, however, failed to mention the Rolex was stolen or lost at the September 12th Meeting.

56.     On October 2, 2023, Mr. Torres now avers on Amended Schedule A/B that the Rolex is stolen and is valued at zero, with the notation that "estimated value $8,500 recovery speculative." [Amended Schedule A/B, docket no. 56]

57.     At the October 3rd Meeting, Mr. Torres testified the Rolex was "just" stolen.

[remainder of page left intentionally blank]

8

58.    At the 2004 Exam, Mr. Torres testified:

```
 6      Q.    Okay.  So then why do you think it was
 7   stolen?
 8      A.    Well, I mean, that was -- I mean, I just
 9   thought that someone took it, because we already
10   looked, like, everywhere.  I mean, I already looked,
11   you know, at her house and -- I mean, the apartment.
12   And also, like, in my apartment and the vehicle,
13   everywhere.  And, I mean, we just never found it.
14      Q.    Okay.  Did you ever go to any pawn stores
15   to see if they had it?
16      A.    To where?  I'm sorry.
17      Q.    Pawn shops?
18      A.    No.  But, I mean, the police -- I do know
19   that if it goes to a pawn shop -- I mean, they
20   routinely check pawn shops.  And because I had a
21   some items stolen, like, about ten years ago, a
22   stereo of my car.  And with the serial number, I
```

2004 Tr. 91:6-22.

59.    Mr. Torres further testified:

```
14      Q.    So is there a reason why between July 6th
15   when you filed the case and August 1st -- why you
16   didn't tell your attorney that the watch had been
17   stolen?
18      A.    Because I thought that I was gonna find it.
19   I mean, I never thought that, you know, it was
20   actually going to go disappear, like -- I had hopes
21   that it was going to show up.
```

9

2004 Tr. 93:14-21.

60.     Mr. Torres originally listed Helzberg Diamonds as an unsecured creditor on his Original

Schedule E/F. [docket no. 25]

61.     Although Mr. Torres later changed Helzberg Diamonds' claim from unsecured to secured,

he does not believe Helzberg Diamonds has a UCC filing on the Rolex.  2004 Tr. 33:11-24.

62.     Mr. Torres averred on Original SOFA 15 that he did not incur any losses in the year before

the Petition Date. [docket no. 26].

63.     To date, Mr. Torres has not found or otherwise located the Rolex.

**Undisclosed Business**

64.     Mr. Torres and his sister Patricia Cerda own Certo Applications LLC ("Certo"), a software

company.

65.     Certo has a bank account at Chase xxx-0079.

66.     Mr. Torres is a signatory on Certo Chase account xxx-0079.

67.     On February 8, 2023, Mr. Torres transferred $48,000.00 from his personal Chase account

6105 into Certo Chase account xxx-0079.

68.     Mr. Torres subsequently transferred funds from Certo to Metroplex Chase account xxx-

8137 as follows:

  a. $20,000.00 transferred on 2/3/23;

  b. $18,000.00 transferred on 2/11/23; and

  c. $10,500.00 transferred on 2/24/23.

69.     Mr. Torres also transferred $20,000.00 ($3,000.00 on 2/11/23 and $17,000.00 on 2/18/23)

back from Certo Chase account xxx-0079 to his personal Chase account xxx-6105.

70.     Mr. Torres did not list Certo on Original or Amended Schedule A/B.

10

71.     Mr. Torres did not list Certo as a business in response to Original or Amended SOFA 27.

72.     Mr. Torres did not list Certo Chase account xxxx-0079 on Original or Amended Schedule A/B.

73.     Mr. Torres testified that he forgot to include his interest in Certo on his bankruptcy paperwork.  2004 Tr. 41:18-42:15.

74.     Certo loaned $20,000.00 to Metroplex and executed a promissory note evidencing same. 2004 Tr. 45:1-10.

75.     Certo is not listed as a creditor on Metroplex's Schedules.

**Undisclosed Income**

76.     Mr. Torres discloses he grosses $7,000.00 a month on Schedule I.  [docket no. 25]

77.     However, on February 6, 2023, five months before the Petition Date, Mr. Torres deposited a check for $61,784.88 into his personal account xxx-6105.

78.     Mr. Torres avers that the $61,784.88 was income he earned from his sister's company, TEKS Solutions.  2004 Exam Tr.  45:22-46:14; 75:4-76:9.

79.     Mr. Torres failed to disclose this $61,784.88 in response to Original and Amended SOFA 3.

80.     Mr. Torres failed to account for this income on his Schedule I.

81.     On July 11, 2023, five days after the Petition Date, Mr. Torres deposited $10,047.07 into his personal account at Chase xxx-6105.

**Clothing Purchases and Gifts to Girlfriend**

82.     Mr. Torres' Schedule J indicates Mr. Torres spends $150 a month on clothing expenses. [docket no. 25]

83.     However, Mr. Torres made the following purchases on Chase Account xxx-6105:

11

a.      $199.00 at Paradise Jewelers on January 10, 2023;

b.      $391.12 at Zara on January 14, 2023;

c.      $231.65 at Sephora on January 14, 2023;

d.      $1,299.00 at Nordstrom on January 16, 2023;

e.      $385.64 at Stuart Weitzman on January 14, 2023;

f.      $546.67 at Diesel on February 5, 2023;

g.      $456.84 at Alo Yoga on February 5, 2023;

h.      $205.24 at Zara on February 4, 2023;

i.      $565.52 at Dose of Roses on February 10, 2023;

j.      $784.81 at Neiman Marcus on February 26, 2023;

k.      $391.87 at Alo Yoga on February 26, 2023;

l.      $170.98 at Victorias Secret on February 26, 2023;

m.      $529.02 at Zara on February 26, 2023;

n.      $331.65 at Shein on March 21, 2023;

o.      $912.41 at Diesel on March 27, 2023;

p.      $254.40 at Armani Exchange on March 27, 2023;

q.      $701.90 at Zara on March 27, 2023;

r.      $568.65 at Stubhub on April 18, 2023;

s.      $478.47 at Alo Yoga on April 23, 2023;

t.      $178.45 at Victorias Secret on April 23, 2023;

u.      $280.80 at Zara on April 23, 2023;

v.      $212.00 at Nakoa Jewelry on April 30, 2023;

w.      $438.40 at Neiman Marcus on May 13, 2023;

12

     x.     $352.05 at Zara on July 17, 2023;

     y.     $214.34 at Nordstrom on July 18, 2023;

     z.     $190.53 at Sephora on July 18, 2023; and

     aa.     $541.09 at Zara on July 18, 2023.

84.     Mr. Torres testified at his 2004 Exam that some, if not all, of these expenses include gifts for his girlfriend, Claudia Steer.

85.     Specifically, the January 16, 2023, $1,299.00 purchase at Nordstrom was a gift for his girlfriend.

86.     None of these gifts are disclosed in response to Original or Amended SOFA 13.

**Mr. Torres' Actual Expenses Exceed Schedule J Expenses**

**Nightclubs and restaurants**

87.     Mr. Torres averred on Schedule J that he spends $500 a month on food and $200 a month on entertainment.  [docket no. 25]

88.     However, Mr. Torres routinely goes to nightclubs, bars, and restaurants and spends more than that in one night.

89.     For example, Mr. Torres made the following purchased on Chase account 6105:

     a.     $816.65 at Club Strana, San Pedro on December 31, 2022;

     b.     $920.10 at Clip MX, San Pedro on December 31, 2022;

     c.     $413.76 at Zarapuntovalle, San Pedro on December 31, 2022;

     d.     $4,216.32 at El Santo Taqueria, Miami, Florida on January 5, 2023;

     e.     $586.28 at Villa Azur, Miami, Florida on January 5, 2023;

     f.     $481.00 at The Mexican, Dallas, Texas on January 20, 2023;

     g.     $1,725.29 at Green Light Social, Dallas, Texas on January 20, 2023;

13

h.      $393.06 at PM Lounge, Dallas, Texas on January 20, 2023;

i.      $339.06 at Del Friscos, Fort Worth, Texas on January 29, 2023;

j.      $257.53 at VB Steakhouse on February 5, 2023;

k.      $425.13 at The Mexican on February 15, 2023;

l.      $1,650.00 at El Chingon, Fort Worth on February 19, 2023;

m.      $693.50 at El Chingon on February 19, 2023;

n.      $386.04 at B&B Butchers, Fort Worth on March 5, 2023;

o.      $1,495.14 at PM Lounge on March 25, 2023;

p.      $252.41 at Texas De Brazil on March 25, 2023;

q.      $2,756.63 at PHD at The Dream Hotel, New York on March 31, 2023;

r.      $747.03 at PHD at The Dream Hotel, New York on March 31, 2023;

s.      $943.40 at PHD at The Dream Hotel, New York on March 31, 2023;

t.      $724.96 at LC NY Times Square on April 2, 2023;

u.      $508.45 at Catch New York on March 31, 2023;

v.      $482.17 at Tao Downtown Nightclub, New York on April 1, 2023;

w.      $2,830.19 at Lavo New York Nightclub on April 1, 2023;

x.      $246.44 at Buzzs Original Steakhouse, Kailua Hawaii on April 28, 2023;

y.      $376.18 at BKG Hotel on April 30, 2023;

z.      $376.19 at Alohilani Resort Honolulu, Hawaii on April 30, 2023;

aa.     $244.15 at Mi Pueblo, Fort Woth on May 6, 2023;

bb.     $658.86 at Komodo, Dallas on May 8, 2023;

cc.     $232.11 at Ojos Locos Sports, Fort Worth on May 6, 2023;

dd.     $260.99 at Texas De Brazil on May 13, 2023;

14

ee.    $779.40 at Te Deseo, Dallas, Texas on July 3, 2023;

ff.    $190.73 at The Jungle Restaurant, Dallas, Texas on July 2, 2023;

gg.    $459.34 at Sports and Social Arlington, Texas on July 9, 2023; and

hh.    $324.53 at Del Friscos on July 16, 2023.

**Personal Travel**

90.    Mr. Torres routinely takes personal vacations.

91.    For example, Mr. Torres traveled to Monterrey, Mexico; Hawaii; the Dominican Republic;

Cuba; New York; and Florida in 2023.  2004 Tr. 55:5-56:21.

**Miscellaneous Transactions**

92.    Mr. Torres is a signatory on Metroplex Recovery LLC's Chase Account xxx-8137.

93.    Metroplex Account xxx-8137 has multiple debit cards, including one issued to Mr. Torres.

94.    Mr. Torres fails to disclose this account on his Schedules A/B.

95.    Mr. Torres routinely causes transfers to be made into and out of his account from his

personal account at Chase xxx-6105.

96.    Mr. Torres is the sole signatory on Metroplex Mobile Diagnostics and Programming LLC's

Chase Account xxx-6288.

97.    Mr. Torres routinely cause transfers to be made into and out of this account into his

personal account and Metroplex's account.

98.    Mr. Torres fails to disclose this account on his Schedule A/B.

99.    Mr. Torres also maintained an account at Robinhood.  2004 Tr. 79:10-75:25.

100.    Mr. Torres failed to disclose the account as either open on Schedule A/B or closed in

response to SOFA question 20.

**Undisclosed Transactions**

15

101.    Mr. Torres' Schedule A/B failed to disclose his interest in Certo Applications, LLC.

102.    Mr. Torres' Schedule A/B failed to disclose his interest in the Certo Applications, LLC Chase account xxx-0079.

103.    Mr. Torres' SOFA questions 3 or 4 fail to disclose the income he received from working from his sister's company.

104.    Mr. Torres' Schedule I failed to accurately disclose all his income.

105.    From December 23, 2022 through July 25, 2023, Mr. Torres deposited $259,889.23 into Chase Account xxx-6105.

106.    Mr. Torres' Schedule J failed to accurately disclose his expenses.

107.    From December 23, 2022, through July 25, 2023, Mr. Torres' withdrew $258,627,41 from Chase Account xxxx-6105.

108.    While many of the transfers into and out of Mr. Torres' account appear to be money transferred between him and Metroplex's Accounts, none of this information is reflected on his Schedules or SOFA.

109.    Mr. Torres' Schedules A/B fail to disclose his signatory authority on Metroplex's Chase Account xxx-8137.

110.    Mr. Torres' Schedule A/B fail to disclose his signatory authority on Metroplex Mobile Diagnostics and Programming LLC's Chase Account xxx-6288.

111.    Mr. Torres' SOFA question 13 fails to disclose gifts to his girlfriend in excess of $600.00.

112.    Mr. Torres fails to accurately disclose the disposition of the Rolex in his original schedules.

**Metroplex Recovery LLC**

113.    Mr. Torres formed Metroplex Recovery LLC in 2012 ("Metroplex"). [SOFA question 27, docket no. 26]

16

114.    Mr. Torres is a managing member of Metroplex.

115.    Metroplex provides mobile locksmith services in the DFW Metroplex and Florida.

116.    On September 7, 2023, Metroplex filed a subchapter v chapter 11 bankruptcy case in the Northern District of Texas, initiating case no. 23-42712.

117.    Mr. Torres is an insider of Metroplex.

118.    Metroplex is an insider of Mr. Torres.

119.    Jim Morrison represented Metroplex.

120.    Frances Smith was appointed as the Subchapter V Trustee in the Metroplex bankruptcy. [docket no. 7, case no. 23-42712]

121.    Mr. Torres signed the Metroplex Petition, Schedules, and Statement of Financial Affairs under penalty of perjury.   [case no. 23-42712, docket nos. 1, 35, 36]

122.    Mr. Torres did not disclose the Present Case on the Metroplex Petition.  [docket no. 1, case 23-42712]

123.    Metroplex SOFA 4 avers that Mr. Torres received transfers valued at zero from Metroplex. [docket no. 36, case 23-42712]

124.    However, the backup documentation to Metroplex SOFA question 4 shows that Metroplex disbursed at least $27,178.73 either directly to Mr. Torres or on his behalf in the 90 days prior to the filing of the Metroplex bankruptcy.  [docket no. 36, case 23-42712].

125.    These SOFA 4 transfers from Metroplex include but are not limited to:

    a.    $332.33 at Sephora as "owner drawings" on September 30, 2022;

    b.    $91.80 at Zara as "owner drawings" on October 17, 2022;

    c.    $531.65 at Zara as "owner drawings" on October 17, 2022;

    d.    $385.20 at Neiman Marcus as "owner drawings" on October 18, 2022;

> e. $1,385.65 at Neiman Marcus as "owners drawings" on October 18, 2022;
>
> f. $645.62 at Zara as "owner drawings" on November 21, 2022; and
>
> g. $632.31 at Zara as "owner drawings" on January 8, 2023.
>
> [docket no. 36, case 23-42712]

126.    Mr. Torres admitted at his 2004 Exam that several of these purchases, including but not limited to the Neiman Marcus charges, were to purchase gifts for his girlfriend. 2004 Tr. 39:10-25.

127.    Mr. Torres answered "no" in response to Present Case SOFA 13, which asks, "[w]ithin 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?"  [docket no. 26, 23-41966].

128.    Metroplex answered "none" in response to SOFA 9, which asks debtors to "[l]ist all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000."  [docket no. 36, case 23-42712].

129.    On September 11, 2023, the Court issued its Scheduling Order and Notice of Status Conference for subchapter v cases, which provides:

> 6. *Debtor's § 1188(c) Report*. The Debtor must file with the Court and serve on the Subchapter V trustee and all parties in interest the pre–status conference report required under § 1188(c) of the Bankruptcy Code no later than October 18, 2023. The Debtor's report shall include, at a minimum, a description of the Debtor's business and operations, the Debtor's efforts to formulate a Chapter 11 plan of reorganization and the Debtor's efforts to communicate with creditors regarding any such plan.
>
> 7. *Plan of Reorganization*. Unless otherwise ordered by the Court, the Debtor must file with the Court a plan of reorganization in accordance with § 1189 of the Bankruptcy Code on or before *12/6/23*. The Debtor may amend its plan of reorganization any time before the confirmation hearing in accordance with § 1193(a) of the Bankruptcy Code.
>
> 8. *Interim Trustee Compensation*. Within 30 days of the petition date and continuing monthly thereafter, Debtor shall remit to the Subchapter V trustee interim compensation in the amount of $1,000. The amount of interim compensation is subject to adjustment by the Court, after notice and hearing upon request of any interested party, and subject to final approval by the Court under 11 U.S.C. § 330. Debtor shall include this interim compensation in any proposed cash collateral budget.

[docket no. 6, case no. 23-42712]

18

130.    Metroplex failed to file its § 1188(c) Report by October 18, 2023.

131.    Upon information and belief, although the Debtor remitted a check for $1,000.00 to the

Subchapter V Trustee, it was returned for insufficient funds.

132.    The United States Trustee moved to dismiss the Metroplex case in part because the Debtor

failed to file its § 1188(c) Report and bounced its $1,000.00 check to the subchapter V trustee.

133.    On December 13, 2023, the Court entered an Agreed Order Dismissing the Metroplex case.

[docket no. 57, case no. 23-42712]

134.    Mr. Torres closed Metroplex in early December 2023.  2004 Tr. 13:15-13:23, 14:19-24.

### Count One: False Oath

135.    The United States Trustee re-alleges and incorporates the allegations contained in

paragraphs 1 through 134.

136.    The Court may deny debtor a discharge if "the debtor knowingly and fraudulently, in or in

connection with the case…made a false oath or account."  11 U.S.C. § 727(a)(4)(A).  The party

objecting to discharge bears the burden of proving by a preponderance of the evidence that (1) the

debtor made the statement under oath; (2) the statement was false; (3) the debtor knew the

statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement

related materially to the bankruptcy case. *Sholdra v. Chilmark, LLP (In re Sholdra)*, 249 F.3d 380,

382 (5th Cir. 2001).  *See also Cadle Company v. Mitchell (In re Mitchell)*, 102 Fed.Appx. 860,

2004 WL 1448041 (5th Cir. 2004).

137.    False oaths under § 727(a)(4)(A) include false statements or omissions by the debtor in the

debtor's schedules and statement of financial affairs. *Beaubouef v. Beaubouef (In re Beaubouef)*,

966 F.2d 174, 178 (5th Cir. 1992).  *See also The Cadle Company v. Guenthis (In re Guenthis)*, 333

B.R. 759, 766 (Bankr. N.D. Tex. 2005).

19

138.    Fraudulent intent may be shown by a reckless disregard for the truth. *In re Sholdra*, 249 F.3d at 383 (citing *Economy Brick Sales, Inc. v. Gonday (In re Gonday)* 27 B.R. 428 (Bankr. M.D. La. 1983) (for the proposition that the cumulative effect of falsehoods together show a "pattern of reckless and cavalier disregard for the truth," which supports a finding of fraudulent intent). "Debtors showing of reckless indifference to the truth in filling out their schedules and statements is equivalent to showing the requisite fraudulent intent to deceive sufficient to bar a discharge under § 727(a)(4)(A)." *In re Guenthis*, 333 B.R. at 767. Mr. Torres' Schedules and Statement of Financial Affairs filed contain sufficient errors and omissions as to constitute a false oath and/or account under 11 U.S.C. § 727(a)(4)(A).

139.    Mr. Torres made statements under oath in connection with his schedules, statement of financial affairs, and 2004 examination testimony.

140.    The statements – including statements relating to assets– were false.

141.    Mr. Torres knew these statements were false.

142.    Mr. Torres omitted the following from his Schedules and SOFA:

    a.    His interest in Certo Applications LLC;

    b.    His interest in Certo Applications LLC's bank account at Chase xxx-0079;

    c.    His signatory authority over Metroplex's bank account at Chase xxx-8137.

    d.    His signatory authority over Metroplex Mobile Diagnostics and Programming LLC's Chase Account xxx-6288.

    e.    $61,784.88 in income in February 2023;

    f.    His accurate income on Schedule I;

    g.    His accurate expenses on Schedule J;

    h.    The missing Rolex watch; and

20

> i.   Gifts made in excess of $600 to his girlfriend in response to SOFA question 13.

143.   Mr. Torres made these false oaths knowingly and fraudulently.

144.   Mr. Torres' reckless disregard for the truth is evident in the numerous, material omissions to his Schedules and SOFA.  The omissions are material – failing to disclose his interest in a business, failing to disclose all of his income, accurate expenses on Schedule J, disposition of his Rolex watch and substantial gifts to his girlfriend.  This is particularly troubling as Mr. Torres also put his business Metroplex Recovery LLC into bankruptcy, signed the petition, schedules and statement of financial affairs under penalty of perjury and appeared in court.  He understands the importance of truthfulness on bankruptcy documents.

145.   Accordingly, Mr. Torres' discharge should be denied because he made numerous false oaths on his Schedules and Statement of Financial Affairs. 11 U.S.C. § 727(a)(4)(A).

**Count Two: Concealment of Assets under 11 U.S.C. § 727(a)(2)**

146.   The United States Trustee realleges and incorporates the allegations contained in paragraphs 1 through 134.

147.   Section 727(a)(2) provides that the Court may deny a discharge if the debtor has:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> (B) property of the estate, after the date of the filing of the petition.

  11 U. S. C. § 727(a)(2).

148.   Evidence of actual intent to hinder, delay, or defraud creditors may be inferred by looking at the following factors:

21

a.      The lack or inadequacy of consideration;

b.      The relationship between the parties;

c.      The retention of possession, benefit, or use of the property in question;

d.      The financial condition of the transferor both before and after the transaction; and

e.      The existence or cumulative effect of a series of transactions or conduct after incurring debt, onset of financial difficulties, or pending or threatened litigation by creditors; and

f.      The general chronology of events and transactions in question.

*Robertson v. Dennis (In re Dennis),* 330 F.3d 696, 702 (5th Cir. 2003).

149.    Mr. Torres purchased an $18,000.00 Rolex one day after he filed his first bankruptcy case, and 54 days before he filed this case.  This was less than a year before the Petition Date.

150.    Mr. Torres purchased the Rolex using a store credit card that he now seeks to discharge in this case.

151.    Mr. Torres "lost" the watch on July 12, 2023, 6 days after he filed this case.

152.    The same day Mr. Torres filed his Original Schedules, he reported the Rolex as stolen with the Fort Worth Police Department.

153.    Mr. Torres failed to disclose the Rolex was either stolen or missing at the September 12th Meeting.

154.    Mr. Torres has failed to look in any pawn shops or otherwise independently search for the missing Rolex.

155.    Mr. Torres' intent to hinder, delay, or defraud creditors or officers of the estate may be inferred by chronology of events in this case.  At best, he acted to the detriment of creditors by incurring over $15,000.00 in new debt less than 60 days before the case filed in an effort to

22

discharge that debt as an unsecured claim.  As worst, he is actively concealing the watch from the

trustee and creditors.  Given the Rolex was purchased the day after he filed the Previous Case, in

which he failed to make any payments to the chapter 13 trustee further supports his intent to hinder,

delay or defraud creditors.  Mr. Torres was aware of the responsibility to be honest with his

creditors.  Mr. Torres' loss of the watch, when viewed in conjunction with the acquisition in

bankruptcy, the pending business bankruptcy, his financial problems, extravagant lifestyle and

decision to file a second personal bankruptcy, evidence intent to defraud creditors.

156.    Accordingly, Mr. Torres' discharge should be denied for concealment of assets under §

727(a)(2)(A) and (B).

### Count Three: Failure to Explain Loss of Assets under 11 U.S.C. § 727(a)(5)

157.    The United States Trustee incorporates the allegations set forth in paragraphs 1 through

134.

158.    Section 727(a)(5) of Title 11  U.S.C. 727(a)(5) provides that the Court shall grant the debtor

a discharge, unless "the debtor has failed to explain satisfactorily, before determination of denial

of discharge under this paragraph, any loss of assets..." 11 U.S.C. §727(a)(5).  "Section 727(a)(5)

does not provide a remedy for fraudulent transactions (unlike other subsections of § 727), but it

does provide a remedy for inadequate and unsatisfactory explanations." *Kilroy v. Guerriero*, 2007

U.S. Dist. LEXIS 35571, *11 (S.D.T.X. 2007).   "The plaintiff must make a prima facie showing

that the defendant has had a sudden and drastic loss of assets just prior to filing bankruptcy, and

upon that showing, the defendant bears the burden to explain satisfactorily any loss of assets." *In

re Hughes,* 353 B.R. 486, 506 (Bankr. N.D. Tex. 2006), *aff'd sub nom. Hughes v. Neary*, 386 B.R.

624 (N.D. Tex. 2008), *aff'd sub nom. In re Hughes*, 309 F. App'x 841 (5th Cir. 2009); *In re

Horridge,* 127 B.R. 798, 799 (S.D.Tex.1991); *In re Reed,* 700 F.2d 986, 992 (5th Cir.1983).

23

159.    Mr. Torres is seeking to discharge at least $15,900.00 in general unsecured debt incurred with the purchase of a Rolex that he then claims to have lost. Mr. Torres purchased the Rolex using an unsecured credit account the day after he filed the Previous Case.   The Rolex was 'stolen' six days after the Present Case was filed, and 54 days after he purchased the watch.  He only reported that loss to the police on August 1, 2023, the same day Schedule A/B was filed, yet none of the information on the 'loss' are reflected in his original schedules.  He failed to testify about the lost or stolen Rolex at the September 12th Meeting.  The chronology of events is suspect, especially as Mr. Torres has failed to take any independent action to search for the Rolex, other than filing a police report.   Such failure to explain a loss of assets constitutes a violation of 11 U.S.C. § 727(a)(5); accordingly, Mr. Torres should be denied a discharge.

## Count Four: False Oath in an Affiliated Case under 11 U.S.C. § 727(a)(4)(A) and 727(a)(7)

160.    The United States Trustee realleges and incorporates the allegations contained in paragraphs 1 through 134.

161.    Section 727(a)(7) of the Bankruptcy Code further provides that the Court shall grant the debtor a discharge unless the debtor has "committed any act specified in [§727(a)(4)(A)], on or within one year before the date of the filing of the petition, or during the case, in connection with another case under this title…concerning an insider."  11 U.S.C. § 727(a)(7).

162.    Metroplex is an insider of Mr. Torres as defined under 11 U.S.C. § 101(31).

163.    Mr. Torres is an insider of Metroplex as defined under 11 U.S.C. § 101(31).

164.    Mr. Torres made statements under oath in connection with the Metroplex Petition, Schedules, and Statement of Financial Affairs.

165.    The statements – including statements relating to potential causes of actions – were false.

166.    Mr. Torres knew these statements were false.

24

167.    Mr. Torres omitted the following from Metroplex's Petition, Schedules and SOFA:

a.    The Present Case on the Metroplex Petition;

b.    Debts owed to Certo;

c.    Gifts in excess of $1,000.00 in response to SOFA 9;

d.    Disbursements to Mr. Torres' in the amount of at least $27,178.73 either directly to Mr. Torres or for his benefit in the 90 days prior to filing this case in response to SOFA question 4.

168.    Mr. Torres made these false oaths knowingly and fraudulently.

169.    Mr. Torres' reckless disregard for the truth is evident in the numerous, material omissions to Metroplex's Petition, Schedules and SOFA.   The omissions are material – failing to disclose gifts to his girlfriend and payments to insiders are potentially valuable chapter 5 recoveries for creditors.   Given that the Present Case was pending when Metroplex' case was filed, Mr. Torres understands the importance of truthfulness on bankruptcy documents.

170.    Accordingly, Mr. Torres' discharge should be denied because he made numerous false oaths on the Metroplex Petition, Schedules and Statement of Financial Affairs. 11 U.S.C. § 727(a)(4)(A), 727(a)(7).

**Count Five: Refusal to Obey Lawful Court Order in an Affiliated Case under 11 U.S.C. § 727(a)(6) and 727(a)(7)**

171.    The United States Trustee realleges and incorporates the allegations contained in paragraphs 1 through 134.

172.    Section 727(a)(6) provides that the Court may deny a discharge if the debtor has (A) refused to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. § 727(a)(6).

25

173.    Section 727(a)(7) of the Bankruptcy Code further provides that the Court shall grant the

debtor a discharge unless the debtor has "committed any act specified in [§727(a)(6)], on or within

one year before the date of the filing of the petition, or during the case, in connection with another

case under this title…concerning an insider."  11 U.S.C. § 727(a)(7).

174.    Metroplex is an insider of Mr. Torres as defined under 11 U.S.C. § 101(31).

175.    Mr. Torres is an insider of Metroplex as defined under 11 U.S.C. § 101(31).

176.    On September 11, 2023, the Court entered its Scheduling Order in the Metroplex Recovery

LLC Chapter 11 case. [docket no. 6, case 23-42712]

177.    The Scheduling Order was entered while Mr. Torres' case was pending.

178.    Mr. Torres did not comply with the Scheduling Order.

179.    In the Metroplex Recovery Chapter 11 case, Mr. Torres failed to file its § 1188(c) Report

by October 18, 2023.

180.    In the Metroplex Recovery Chapter 11 case, Mr. Torres failed to make the first $1,000.00

to the Subchapter V Trustee.

181.    Metroplex Recovery LLC is an insider of Mr. Torres because Mr. Torres was an officer

and person in control.  *See* 11 U.S.C. § 101(31)(A)(iv).

182.    Accordingly, Mr. Torres' discharge should be denied because he refused to comply with a

lawful court order within one year of the filing of the petition. 11 U.S.C. § 727(a)(6).

## <u>Conclusion</u>

The United States Trustee respectfully asks the Court to deny the Defendant's discharge

under 11 U.S.C. § 727 (a)(4)(A), 11 U.S.C. § 727(a)(2), 11 U.S.C. § 727(a )(5), 11 U.S.C. §

727(a)(4)(A) and (a)(7); and 11 U.S.C. § 727(a)(6) and (a)(7).   The United States Trustee

respectfully requests any other such relief as is just.

26

DATED: January 11, 2024                  Respectfully submitted,

                                         KEVIN M. EPSTEIN
                                         UNITED STATES TRUSTEE

                                         /s/ Elizabeth Ziegler Young
                                         Elizabeth Ziegler Young
                                         Trial Attorney
                                         Texas State Bar No. 24086345 (Also by New York)
                                         Office of the United States Trustee
                                         1100 Commerce Street, Room 976
                                         Dallas, Texas 75242
                                         (214) 767-8967 x 1247
                                         elizabeth.a.young@usdoj.gov

27